571 So.2d 1187 (1990)
S.A.
v.
E.J.P. and R.L.P.
Civ. 7598.
Court of Civil Appeals of Alabama.
November 14, 1990.
Allen Millican, Gadsden, for appellant.
James E. Turnbach of Pruett, Turnbach & Warren, Gadsden, for appellees.
L. CHARLES WRIGHT, Retired Appellate Judge.
S.A. (father) appeals from a decree of adoption entered by the Etowah County Juvenile Court. The child, R.N., is the *1188 illegitimate daughter of S.A. and K.P. (mother).
The mother and father, residents of Oklahoma, began a relationship in 1986. The father was age fifteen; the mother was age seventeen. The mother conceived and bore a daughter in 1987. The relationship ended when the father learned of the mother's pregnancy. The father gave no support or assistance. Marriage was never discussed, but the father suggested placing the child for adoption. After the birth the father did not visit the hospital and refused to acknowledge paternity so that he could be listed as the father on the birth certificate.
The child lived with the mother and the maternal grandmother for the first five to eight months of her life. The father and the paternal grandmother occasionally visited the child during this time. The paternal grandmother periodically contributed diapers for the child's use. The father made no contributions. When the child was approximately eight months old, the mother determined that she was unable to care for the child. She took the child to the paternal grandmother's home, where the father resided. After caring for the child for approximately one month, the paternal grandmother requested to have full custody of the child. The maternal grandmother would not consent to this request. With the consent of the paternal grandmother, the maternal grandmother took the child from the paternal grandmother's home. The maternal grandmother then made arrangements for her sister and her brother-in-lawE.J.P. and R.L.P. (great-aunt and great-uncle)to care for the child. The great-aunt and great-uncle live in Etowah County, Alabama and are the appellees in this action.
In October 1987, shortly after the child arrived in Alabama, the great-aunt and great-uncle filed a petition for temporary custody of the child. The trial court granted the petition. It is not clear whether the father was legally served in the custody proceeding. It is without dispute that the father had actual notice of the custody order and took no action to have it set aside.
In February 1989 the great-aunt and great-uncle filed a petition for adoption of the child. The case was transferred to juvenile court. The father and the Cherokee Indian Nation in Oklahoma were notified prior to the hearing. The Cherokee Indian Nation did not respond to the notification. A hearing on the petition was held in January 1990. The father, the mother, and the great-aunt and great-uncle were present. In February 1990 the trial court granted the petition for adoption.
From October 1987 to January 1990 the father had no contact with the child except for occasional phone calls. During this time the child received a small financial contribution and an occasional gift from the father. At the time of the adoption hearing, the father was nineteen years old and enrolled as a freshman at a community college in Garden City, Kansas.
The father is 1/8 Cherokee Indian. He was not born on a reservation, has never lived on a reservation and has never attended a reservation school. The only contact the father has had with the reservation has been for medical or dental purposes. He is registered with the Cherokee Nation. The mother is not an Indian. The child was not born on a reservation and has never been on a reservation.
The father appeals and asserts that the trial court erred in refusing to follow specific procedures outlined in the Indian Child Welfare Act of 1978 (ICWA), 25 U.S. C.A. §§ 1901-1963 (West 1983). The great-aunt and great-uncle contend that the ICWA is not applicable. The dispositive issue, therefore, is the applicability of the ICWA to the facts of this case.
The ICWA was enacted in response to a rising concern in the 1970's over the consequences of the removal of Indian children from their Indian families and Indian tribes by abusive child welfare practices. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Congress found that non-Indian public and private agencies separating Indian children from their families *1189 failed to recognize the unique cultural and social standards of the Indian community. 25 U.S.C.A. § 1901(5). Congress adopted the ICWA with the express purpose:
"To protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture...."
25 U.S.C.A. § 1902.
The ICWA operates where an Indian child is the subject of a child custody proceeding. Child custody proceedings include foster care placement, termination of parental rights, pre-adoptive placement, and adoptive placement. 25 U.S.C.A. § 1903. The ICWA defines "Indian child" as an unmarried person less than eighteen years old who is either a member of, or is eligible for membership in, an Indian tribe. 25 U.S.C.A. § 1903(4). If the threshold requirements are met, the provisions of the ICWA are applicable.
A number of jurisdictions, however, have created an exception to the applicability of the ICWA even in situations where the threshold requirements have been met. See In the Matter of the Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982); In re S.A.M., 703 S.W.2d 603 (Mo.App. 1986); In re Adoption of Baby Boy D, 742 P.2d 1059 (Okla.1985), cert. denied sub nom. Harjo v. Duello, 484 U.S. 1072, 108 S.Ct. 1042, 98 L.Ed.2d 1005 (1988); Claymore v. Serr, 405 N.W.2d 650 (S.D.1987). The "Existing Indian Family" exception has been applied to those fact situations involving the voluntary relinquishment of an illegitimate Indian child by its non-Indian mother. The Kansas Supreme Court promulgated this exception in In the Matter of the Adoption of Baby Boy L. That court found the overall concern of the ICWA to be the unwarranted removal of Indian children from an existing Indian family unit and the resultant breakup of the Indian family. It concluded that the ICWA was inapplicable in a case where an illegitimate child who had never been a member of an Indian family or culture is the subject of a child custody proceeding. In support of its conclusion, the court looked to the legislative history and the language of the ICWA. It determined that the intent of Congress in enacting the ICWA was to maintain existing family and tribal relationships.
The "Existing Indian Family" exception is not without its critics. See In re Adoption of a Child of Indian Heritage, 111 N.J. 155, 543 A.2d 925 (1988); In re the Custody of S.B.R., 43 Wash.App. 622, 719 P.2d 154 (1986); Comment, The Indian Child Welfare Act of 1978: Does It Apply To The Adoption Of An Illegitimate Indian Child?, 38 Cath.U.L.Rev. 511 (1989). We find, however, the rationale and the conclusions reached by those jurisdictions supporting the exception to be persuasive. Similarly, we find the legislative history to be supportive of the exception. See generally, H.R.Rep. No. 1386, 95th Cong., 2d Sess. reprinted in 1978 U.S.Code Cong. & Admin.News 7530.
We find that the facts of this case lend themselves to an application of the "Existing Indian Family" exception.
The child may be an Indian child, as defined in the act, by virtue of her biological father. However, since birth, she has either resided with her non-Indian mother or her non-Indian great-aunt and great-uncleexcept for a period of four weeks when she lived with her father and paternal grandmother. The mother and father were never married and never lived together. The father never supported the mother or the child financially. The child has had minimal contact with her father. She has had no involvement in tribal activities or any participation in Indian culture. The evidence reflects that the father has had only minimal contact with the reservation. The father never exercised his parental responsibilities and never attempted to become a part of the child's life.
This child was never a part of an Indian family environment. She has never been a member of an Indian family, has never lived in an Indian home, and has never *1190 experienced the Indian social and cultural world. To apply the ICWA to the facts of this case would be contrary to the congressional intent. We agree with the Kansas Supreme Court's finding in In the Matter of the Adoption of Baby Boy L that Congress did not intend to "dictate that an illegitimate infant who has never been a member of an Indian home or culture, and probably never would be, should be removed from its primary cultural heritage and placed in an Indian environment over the express objections of its non-Indian mother." The ICWA is not applicable to the facts of the present case.
The father next asserts that the proceedings were held in violation of state law. Specifically, he asserts that the child's initial entry into Alabama was in violation of § 38-7-15, Code 1975. Section 38-7-15 provides in pertinent part the following:
"No person or agency shall bring or send any child into the state of Alabama for the purpose of placing him or procuring his adoption or placing him in any child-care facility ... without first obtaining the consent of the department."
The record reflects that the child was not brought into this state for adoption purposes. The great-aunt and great-uncle initially agreed to take the child into their home in an effort to lend support to the mother and the maternal grandmother. They did not begin adoption proceedings until a year and a half later. Even if this were not the case, the record reflects that shortly after the child's arrival the great-aunt and great-uncle notified the department when they petitioned for temporary custody. There was no violation of § 38-7-15.
We conclude that the ICWA is not applicable to this case and that there was no violation of § 38-7-15. Furthermore, our review of the record supports the trial court's finding that it was in the best interests of the child to grant the petition for adoption. This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.